## Commonwealth *v*. Fry.

*Criminal law—Murder—Jury—Challenges.*

Where a challenge for bias is disallowed and the defendant challenges peremptorily, no injury is done the defendant if he still have other peremptory challenges.

*Criminal law—Murder—Disqualification of jurymen.*

A verdict of guilty of murder will not be set aside because one of the jurymen said as to the prisoner before the trial that " they should hang him without a trial if guilty," and that another juryman had said that the prisoner was a man of bad character, and that he was a man likely to commit a crime of that kind.

*Criminal law—Murder—Evidence—Model of a house.*

The Supreme Court will not reverse a verdict of guilty of murder in the first degree because a model of the house in which the crime was committed in evidence was alleged to be not a reproduction of the house, where the court can discover in the model no ground for asserting that the prisoner was prejudiced or in the slightest degree injured by it.

*Criminal law—Murder—Evidence—Motive.*

On the trial of an indictment for murder where the evidence tends to show that the motive was jealousy, evidence as to the relation between the prisoner and the wife of the deceased is admissible.

Argued Jan. 7, 1901. Appeal, No. 331, Jan. T., 1900, by defendant, from judgment of O. & T. Cumberland Co., on verdict of guilty of murder in the first degree in case of Commonwealth v. Martin Fry. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Indictment for murder. Before E. W. Biddle, P. J.

At the trial it appeared that May 19, 1900, the prisoner shot Edward Collins, his brother-in-law, with a heavily loaded gun. The shot was fired across a table, and the distance from the muzzle of the gun to the deceased was about two feet. The court refused to strike out evidence of improper relation between the prisoner and Mrs. Collins.

Verdict of guilty of murder in the first degree.

On a rule for a new trial Frank Koser testified as follows, as to statements made by John Deckman, a juror, prior to the trial :

" Q. Do you know Mr. Deckman of Shiremanstown who was

a juror in the Fry case? A. Yes, sir.   Q. What is his name?
A. John Deckman.   Q. Now, Mr. Koser, what if anything did
he (John Deckman) say· to you prior to the Fry trial?
A. Why he asked the question—I put it to him I guess it was.
I told him he was drawn as a juror and he would be here on the
murder case.   It was something like that.   Of course I didn't
say to him that he would be drawn on that, and he replied to
me, ' Well,' he says,' they should hang him without a trial, if
guilty.'   Q. What reason did he give?   A. The murderer
should hang without a trial to save expenses."

George W. Hetrick testified as follows as to statements
made by John Senseman, a juror, prior to the trial.

" Q. Do you know Mr. Senseman who was a juror in the
Fry case?   A. I am very well acquainted with Mr. Senseman.
His name is James Senseman.   Q. Where did you meet him?
A. Well, the conversation occurred in my brother's store at
Kingston.   He was relating to us what he heard and saw on
his visit to the neighborhood where the murder occurred.   And
the conversation which he gave to us people in the store was
such that fairly impressed upon my mind and others that this
man Fry—"

Objection.

" He also said that he heard that they caught Fry at the
proper time, as he had already changed his clothing to leave
the country.   That he was a man of bad character, and from
what he learned of the other people, that he was a man that
would likely commit a crime of that kind.   He expressed him-
self freely around there different times.   He also expressed
himself over at the hotel freely before the people in regard to
the affair.   And I heard a party say down there that he ex-
pressed himself so freely," (objection) " that he didn't think he
was a fit man to be on the jury. "

Verdict of guilty of murder in the first degree, in pursuance
of which the defendant was sentenced.

*Errors assigned* were (1) in not sustaining defendant's chal-
lenge for cause of a juryman, who stated that he believed that
he would be influenced in making up his verdict by scruples
against capital punishment ; (2, 3) in not granting a new trial
because of the statements made by a juryman prior to the trial ;

(5) in admitting in evidence the model referred to in the opinion of the Supreme Court; (6) in refusing to strike from the record the evidence relative to the relations between the prisoner and Mrs. Collins.

*Fillmore Maust* and *J. M. Weakley,* with them *J. E. Barnitz,* for appellant.

*William A. Kramer,* district attorney, and *W. F. Sadler,* with them, *G. E. Mills,* for appellee.

PER CURIAM, February 18, 1901:

The accused was convicted of murder of the first degree and sentenced according to law. An appeal to this court was followed by eighteen assignments of error. Assignments one, two and three relate to disqualifications of jurors. The first assignment related to a juror's "scruples against capital punishment." The defendant peremptorily challenged the juror on this ground, and when the jury box was full several of his peremptory challenges remained. "Where a challenge for bias is disallowed and the defendant challenges peremptorily, no injury is done the defendant if he still have other peremptory challenges." The second and third assignments allege that jurors Deckman and Senseman were disqualified by the testimony of Koser and Hetrick. The testimony referred to failed to establish cause for a new trial. The counsel of the accused made no effort to sustain the alleged disqualification in their printed argument, and an oral argument, if made, would have been unavailing because, as we have seen, the testimony referred to furnished no warrant for a reversal.

The fourth assignment is based on an excerpt from the general charge which, taken in connection with the latter, and the testimony in the case, furnished no ground for complaint or suggestion of error.

The fifth assignment rests upon the assumption that the model admitted in evidence was misleading and therefore prejudicial to the interest or right of the accused. We do not so regard it. There was no error committed in the admission of it or in the construction thereof, nor can we discover in the model any ground for asserting that the defendant was

prejudiced or in the slightest degree injured by it. The sixth assignment relates to testimony showing the relations between Mrs. Collins and the accused. It was clearly competent to prove motive : Com. v. Ferrigan, 44 Pa. 386 ; Turner v. Commonwealth, 86 Pa. 54. Comment upon this subject is unnecessary.

The seventh, eighth, ninth, tenth and eleventh assignments have been carefully considered by us and we cannot find in either of them any cause for reversing or setting aside the verdict and judgment. The twelfth, thirteenth, fourteenth and fifteenth assignments have been duly considered by us and we are unable to find in them anything prejudicial to the rights of the accused. The same may be said of the sixteenth, seventeenth and eighteenth assignments. The answers to the defendant's fifth, seventh, eighth and ninth points sufficiently appear in the general charge.

A careful examination of the charge, of the answers to the defendant's points, and of the testimony referred to and discussed in the paper-books, have convinced us that no error was committed in the trial of the case. It was presented fairly and impartially to the consideration of the jury and no valid reason appears for calling in question the disposition made of it.

The judgment is affirmed and it is directed that the record be remitted in order that the sentence may be carried into execution according to law.