# Commonwealth *v.* Spahr, Appellant.

*Criminal law—Murder—Jury—Opinion of jurors—Challenges.*

Where on the trial of an indictment for murder, the prisoner has not exhausted his peremptory challenges, the acceptance of jurors challenged on account of opinions formed and expressed by them, does him no harm, and is no ground for reversing a verdict and judgment of guilty.

In determining whether a juror should be rejected for an opinion formed, the established test is whether or not he can throw aside his impression or opinion and render an impartial verdict on the evidence alone. That question the juror alone can answer, and the weight of his answer is not to be determined exclusively by his words as they appear in print in the record, but by his words, manner and bearing, as to which a fair measure of discretion must be allowed by the court below which had the juror before it.

*Criminal law—Murder—Evidence—Dying declaration.*

On the trial of an indictment for wife murder, where the killing is admitted and the only defense is insanity, the dying declaration of the deceased, when offered as a whole and only a general objection is made, is admissible although in addition to matters relating to the res gestæ it contains statements as to prior threats. Whether it would have been admissible even if specifically objected to, not decided.

Argued Feb. 27, 1905. Appeal, No. 1, Jan. T., 1905, by defendant, from judgment of O. & T. Cumberland Co., on verdict of guilty of murder of the first degree in case of Commonwealth v. David Spahr. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and ELKIN, JJ. Affirmed.

Indictment for murder. Before E. W. BIDDLE, P. J.

At the trial it was shown that the deceased was killed on

May 31, 1904, by shooting with a revolver.   The defense was insanity.

Several jurors were challenged for cause because of opinions formed and expressed by them.   The challenges were over-ruled. [1-3]

The court admitted as a whole under objection and exception the dying declaration of the deceased.

As to this question the court in an opinion in a motion for a new trial, said:

Under the circumstances, there was no error in admitting the entire document sworn to by the deceased, as her dying declaration.   The general rule on the subject is thus laid down in 6 Am. & Eng. Ency. of Law (1st ed.), 123: "Dying declarations are restricted to the act of killing, and to the circumstances immediately attending it and forming a part of the res gestæ.   When they relate to former and distinct transactions, and embrace facts or circumstances not immediately illus-trating or connected with the declarant's death, they are inadmissible."   There is no doubt that the declaration in the present case was made under the solemn belief of impending death.   Counsel for defendant argues that it was inadmissible because it contained the preliminary statement that when the defendant came to declarant's house on the morning of May 31, 1904, "he was not living with her because she was afraid of him because of his threats to do her injury and to shoot her; that at one time last summer he threatened to cut her to pieces, that on Friday one week ago to-day he threatened to shoot her and made threats to kill her at different other times."   This is immediately followed by the statement, "that when he came into her house at the said time, to wit: May 31, 1904, he asked her why she had him arrested, that she said in reply that she was afraid of him on account of his threats and his drinking, he said that is all I want to know and then began shooting at her with a revolver," etc.

If the defense set up had been that the prisoner killed his wife in self-defense, or that the elements of deliberation and premeditation were absent, there would be some foundation for the complaint concerning the preliminary words of the statement.   But the only defense was that the prisoner had so brooded over the suspected infidelity of his wife and his do-

mestic troubles, and his consequent separation from his family, that his mind became unbalanced. The portion of the dying declaration which is objected to could therefore not have injuriously affected the prisoner, because it merely emphasized the domestic disputes having been abundantly proved by other evidence. In People v. Beverly, 108 Mich. 509 (66 N. W. Repr. 379), where the defense interposed was insanity and the prisoner was convicted of murder of the second degree, a dying declaration of the murdered wife set forth that the prisoner had repeatedly threatened to kill her and others if she should leave him, and the court below struck out only the part applying to others. The admission of the declaration was assigned as error, inter alia, because a large portion of it was about matters remote as to time and place, and not a part of the res gestæ. The Supreme Court overruled the assignment of error, saying : " In this case the statement showed that the defendant repeatedly threatened to shoot his wife if she should leave him, or refuse to cohabit with him. The testimony showed that she did leave him, and that, being unable to induce her to return, he shot her. There is an obvious and intimate connection between these threats and the act. They throw light upon the cause of the shooting, and, together with the circumstances, were properly included in the statement." The tenth reason is dismissed.

The jury rendered a verdict of guilty of murder of the first degree upon which judgment of sentence was passed.

*Errors assigned* were (1–3) overruling challenges to jurors ; (7) in admitting as a whole the dying declaration of the deceased.

*Joseph S. Shapley*, for appellant.

*T. Ralph Jacobs*, district attorney, *Herman Berg, Jr., Thos. E. Vale*, for appellee, were not heard.

PER CURIAM, April 17, 1905 :

The first and second assignments of error are to the overruling of challenges for cause to jurors on account of opinions formed and expressed by them. As the prisoner did not ex-

haust his peremptory challenges the acceptance of the jurors did him no injury: Com. v. Fry, 198 Pa. 379.

But it does not appear that challenges were improperly overruled. In the present day when everybody reads the news with the more or less conscious result of acquiring views which may vary from transitory impressions to fixed opinions, to exclude such readers from the jury box would be to exclude the most intelligent and competent members of the community. How far impressions already existing may affect the judgment upon evidence to be produced can only be known positively to the juror himself and perhaps not always with certainty to him. Much latitude must therefore be left to the discretion of the trial judge to be exercised in view of the appearance, bearing, etc., of the juror, as well as upon his literal words. " The established test is whether or not the juror can throw aside his impression or opinion and render an impartial verdict on the evidence alone. That question the juror alone can answer, and the weight of his answer is not to be determined exclusively by his words as they appear in print in the record, but by his words, manner and bearing, as to which a fair measure of discretion must be allowed to the court below which had the juror below it." Com. v. Eagan, 190 Pa. 10; Com. v. Roddy, 184 Pa. 274.

None of the other assignments of error are in accordance with the requirements of the rules of court, as they do not set forth the evidence or matter objected to, or even refer to the place in the record where they can be found. None of them have any merit, and the only one that is worth while to notice is the seventh, in relation to the admission of the dying declaration of the murdered wife. So far as appears the objection was to the declaration as a whole. The commonwealth as required to do offered it as a whole and as the greater part of it was clearly competent the objection should have been specific. But even if the parts objected to had been specified it is by no means clear that the objection should have been sustained. The declaration was made under the full legal sanction of belief in impending death, which the law regards as equivalent to an oath. If the wife had survived and had taken the stand on a trial for attempt at murder everything in the declaration would have been competent testimony from her. It is true that dying

declarations are admitted from necessity and not being subject to cross-examination are in general to be confined to the res gestæ of the killing. But in the present case the circumstances of the killing were admitted and the only defense was insanity. The previous threats had an obvious and intimate connection with the act, and in the very closely analogous case of People v. Beverly, 108 Mich. 509,* it was held that the circumstances made the declaration admissible, even as part of the res gestæ. Whether we need to go this far or not in our view of the strict law, it is manifest that the declaration did not relate to any disputed fact, and could not possibly have done the prisoner any injury.

Judgment affirmed and record remitted for purpose of execution according to law.

---

* Also reported 67 N. W. Repr. 379.    Reporter.