Commonwealth *v.* Colon, Appellant.
Commonwealth *v.* Mitchell, Appellant.

Submitted Sepember 11, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*V. Clayton McQuiddy, III,* Assistant Public Defender, for appellants.

*Larry E. Jones,* Assistant District Attorney, for Commonwealth, appellee.

OPINION BY PACKEL, J., December 11, 1972:

These appeals present the serious question of whether an enforcement official should be permitted to serve as a juror when alleged criminal conduct was aimed at the police.[1] The problem is claimed to be accentuated

---

[1] Other issues presented by the appellants have no merit. No abuse of judicial discretion was shown as to: the severance of trials of jointly indicted defendants, Act of March 31, 1860, P. L. 427, §40, 19 P.S. §785; sequestration of prospective jurors, *Commonwealth v. Cephas*, 213 Pa. Superior Ct. 278, 247 A. 2d 662 (1968) ; and sequestration of witnesses, *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A. 2d 861 (1960), cert. denied, 365 U.S. 846. The

by the circumstance that one of the appellants was a Black Muslim.

Three defendants were tried on charges stemming from the nighttime robbery of a West Chester bar. During *voir dire* the judge refused to dismiss for cause a police commissioner of a local township, after defense counsel had exercised all their peremptory challenges. At the trial there was evidence of shooting by the police but it was not clear whether shooting was done by the defendants. Many of the witnesses were police officers. The defendants were convicted of burglary, armed robbery with accomplice, violation of the Uniform Firearms Act, receiving stolen property, and conspiracy, but were acquitted on the charge of attempts with intent to kill.

Defendants are guaranteed the right to "an impartial jury" by the Sixth Amendment of the United States Constitution and by Article 1, §9 of the Pennsylvania Constitution. Pennsylvania, neither by statute nor rule, provides any guidelines as to what constitutes impartiality, but merely indicates the duty of the court to consider challenges for cause.[2] Other states have statutes specifying categories of potential jurors that are removable for cause.[3]

An analysis of case law indicates that there are two types of situations in which challenges for cause should be granted: (1) when the potential juror has such a close relationship, be it familial, financial or situational, with parties, counsel, victims, or witnesses, that the

denial of more than 20 peremptory challenges of prospective jurors, irrespective of the number of defendants, is legislatively mandated. Act of March 31, 1860, P. L. 427, §40, 19 P.S. §785.

[2] "When a challenge for a cause assigned shall be made in any criminal proceeding, the truth of such cause shall be inquired of and determined by the court." Act of March 31, 1860, P. L. 427, §39, 19 P.S. §813; *cf.* Pa. R. Crim. P. §§1106, 1107.

[3] E.g., Fla. S.A. §40.07 (1961) and §932.12 (1970).

court will presume the likelihood of prejudice;[4] and (2) when the potential juror's likelihood of prejudice is exhibited by his conduct and answers to questions at *voir dire*.[5] In the former situation, the determination is practically one of law and as such is subject to ordinary review. In the latter situation, much depends upon the answers and demeanor of the potential juror as observed by the trial judge and therefore reversal is appropriate only in case of palpable error.[6]

The broad question raised here is whether law enforcement officials, because of their occupational relationship to criminal cases, should automatically be removed for cause, or whether they should be removed only if their likelihood of prejudice is manifested by their answers and demeanor on *voir dire*. The categories of relationships which automatically call for removal should be limited because it is desirable to have a jury composed of persons with a variety of backgrounds and experiences. We believe that an enforcement officer is capable of professional objectivity in considering the case of a defendant accused of a crime against society. Absent any real relationship to the case, the removal of an enforcement officer should de-

---

[4] *See Commonwealth v. Stewart*, 449 Pa. 50, 295 A. 2d 303 (1972), in which a trial was held inherently prejudicial because the father of the victim was a member of the jury panel, associating with the jurors for two and one-half days.

[5] " 'The test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence and this is to be determined by the discretion of the trial judge, based upon the juror's answers and demeanor. . . . Nothing short of a palpable abuse of discretion justifies a reversal in passing on a challenge for cause': Com. v. Gelfi, 282 Pa. 434, 437, 128 A. 77, 79." *Commonwealth v. Peronace*, 328 Pa. 86, 92, 195 A. 57, 59 (1937) (no error in not dismissing for cause relatives of county detective, who was the active prosecutor in the case, and political allies of the district attorney).

[6] *Supra*, note 5.

pend on the sound exercise of discretion by the trial judge. In the light of the questioning of the police commissioner in this case, and defense counsel's failure to question him further, the judge could properly determine that the police commissioner had not exhibited any prejudice which would require his dismissal for cause.

The cases appear to support the view that the likelihood of bias on the part of police officers, who have no particular relationship to the case or to the police force involved, is not so great that the court must remove the officer from the jury. "Membership in a police force is no disqualification for jury duty." *Cavness v. United States,* 187 F. 2d 719, 723 (9th Cir. 1951), cert. den., 341 U.S. 951. In that case, the court held that a juror's failure to reveal membership in a reserve police force was not grounds for a new trial. In *Mikus v. United States,* 433 F. 2d 719 (2d Cir. 1970), it was held not to be error for the court to refuse to remove (1) a police officer who had left the service and (2) a wife of a state police officer. *Commonwealth v. Schartner,* 88 Pa. Dauph. 134 (1967), aff'd 214 Pa. Superior Ct. 748 (1969), held that it was no error for the court to refuse to remove a guard at a military installation.[7]

A narrower aspect of the broad question must be considered because the defendants were accused of

---

[7] *See also, Cash v. State,* 224 Ga. 798, 164 S.E. 2d 558 (1968) (no error in not dismissing constable and justice of the peace despite a statute exempting them); *State v. Reese,* 250 La. 151, 194 So. 2d 729 (1967) (no error in not dismissing deputy sheriff). The cases cited by the appellant are distinguishable in that in those cases there was more than the bare relationship of being an enforcement officer. *State v. Langley,* 342 Mo. 447, 116 S.W. 2d 38 (1938) (deputy sheriffs and the sheriff, their superior, was a witness); *State v. Butts,* 349 Mo. 213, 159 S.W. 2d 790 (1942) (police officer and police chief, his superior, was material witness); *Gaff v. State,* 155 Ind. 277, 58 N.E. 74 (1900) (deputy sheriff and employee of the sheriff with financial interest in the case).

shooting at police officers with intent to kill. This meant that the police commissioner as a juror was being required to decide the defendants' guilt or innocence as to a crime against police officers. Identification with the position of the victim has been recognized as grounds for removal. In *Sims v. United States*, 405 F. 2d 1381 (D.C. Cir. 1968), the court held that all persons who are, or who are related to, taxicab drivers should be excluded from the jury on re-trial in a case involving the felony murder of a cab driver.[8] In the instant case the crime being tried involved risks to the lives of police officers which are similar to the risks the potential juror and his associates must face. Therefore, the likelihood of prejudice from the relationship between the juror's occupation and the nature of the charge should have caused the court below to remove the police commissioner from the jury.

A trial error does not necessarily call for a new trial. The nature of the error and its underlying reason must be examined from the standpoint of its possible harm. We have concluded that the error was based on the factor that one of the charges involved

---

[8] Other cases have held that a juror's failure to reveal relevant background which would have been grounds for a challenge for cause or, would have provoked a peremptory challenge, required reversal and a new trial when the juror should have been on notice that the information was called for. See *Jackson v. United States*, 395 F. 2d 615 (D.C. Cir. 1968) (in murder case involving a love triangle, juror had been member of love triangle and lover was murdered); *United States ex rel. De Vita v. McCorkle*, 248 F. 2d 1 (3rd Cir. 1957) (victim of robbery under circumstances similar to case on trial); *United States ex rel. Fletcher v. Cavell*, 287 F. 2d 792 (3rd Cir. 1961) (habeas corpus action, son-in-law of county detective who was principal prosecutor in the case and who testified at trial). *Cf., Commonwealth ex rel. Fletcher v. Cavell*, 395 Pa. 134, 149 A. 2d 434 (1959), in which the court held that the challenge for cause was made too late since the juror had already been sworn.

police officers as victims. However, the juror in question, as well as all the other jurors, found that the defendants were not guilty of that charge. The defendants were only found guilty of crimes which did not constitute criminal conduct aimed at policemen. The error of the court below, therefore, was harmless because the likelihood of prejudice, which would have called for automatic removal, was applicable only with respect to the charge upon which the defendants were acquitted.[9]

Judgment of sentence affirmed.

HOFFMAN, J., concurs in the result.

────────

DISSENTING OPINION BY SPAULDING, J.:

I respectfully dissent.

I cannot agree with the majority that the error of allowing a police officer to sit as a juror was cured merely because in the instant case appellants were acquitted of the charge of attempts with intent to kill the arresting officers. Their holding assumes that the police officer's bias could only have had an effect upon that charge. It ignores the possibility that a dispute among the jurors over that charge may have been compromised by reaching verdicts of guilt on the other charges. It also disregards the effect a policeman's presence on the jury may have had on the other jurors' deliberations. Moreover, there is a real possibility that the bias of the police commissioner on the attempts charge, the existence of which the majority concedes, influenced the consideration of the other charges.

The police commissioner's answers to questions posed on *voir dire* concerning his ability to objectively

────────

[9] "Errors occurring in connection with the trial may be disregarded or treated as harmless by the appellate court if the verdict demonstrates that they had no effect upon the final result." 9 Standard Pennsylvania Practice, §215 (1962).

evaluate the testimony of police officers were uncertain.[1] This failure to assert his objectivity leaves some doubt concerning this juror's lack of prosecutorial bias which when added to the fact that the testimony of six police officers[2] was to be evaluated, clearly indicates the potential for prejudice.

I agree with the majority that the categories of relationships calling for automatic disqualification of a juror should be limited for the laudable purpose of having juries comprised of persons from a broad variety of backgrounds. This purpose should not, however, be so exalted as to endanger the minimal due process guarantee of a fair trial by a panel of *impartial* jurors indifferent to the result of the case. See *Irvin v. Dowd*, 366 U.S. 717 (1961); *Commonwealth v. Stewart*, 449 Pa. 50, 295 A. 2d 303 (1972). The majority holds that the likelihood of bias on the part of police officers is not so great that an officer must be removed from the jury. As their opinion points out, cases from other jurisdictions support this view. See *Anno.*, 140 A.L.R. 1183, and cases listed therein. But, there are a number of cases to the contrary. See, e.g., *State v. Jackson*, 275 Minn. 462, 147 N.W. 2d 689 (1967); *Tate v. People*, 125 Colo. 527, 247 P. 2d 665 (1952); *State v. Rowe*, 238 Iowa 237, 26 N.W. 2d 422 (1947); *State v. Langley*, 342 Mo. 447, 116 S.W. 2d 38 (1938); and *Wallis v. State*, supra at n. 2. As the majority indicates, all of these cases, except *Wallis*, are distinguishable as involv-

---

[1] E.g., when asked whether a policeman is more worthy of belief than a layman, he stated that "it depends on the individual."

[2] See *Wallis v. State*, 38 Ala. App. 359, 84 So. 2d 788 (1955), where the occupational bias of a law enforcement officer, alone, was held to be a sufficient basis for challenge. The Court stated: "In the instant case, the state's evidence was based solely on the testimony of two law enforcement officers. This being true, we think that a deputy sheriff would stand less indifferent than a layman free from professional influence." 84 So. 2d at 790.

ing more than the fact of occupational status as the grounds for disqualification. But the cases do recognize the problems of credibility and prosecutorial bias presented when police officers serve as jurors.[3]

There has been then, at the very least, judicial recognition of the problem of prosecutorial bias present when policemen serve as jurors in criminal cases. Because of his view of expertise, the officer is likely to feel that his functions are performed with administrative regularity and that the arrest of a suspect therefore indicates his guilt. His predisposition is contrary to the presumption of innocence. See J. Skolnick, Justice Without Trial, at 192-96, 240-41 (1966).

Our Supreme Court recently held in *Commonwealth v. Stewart*, supra, that where the potential for prejudice is present, actual prejudice will be presumed for the sake of insured fairness. Given the Sixth Amendment's guarantee of an impartial jury and *Stewart's* clear indication that the potentialities, rather than actualities, or prejudice in jury selection should be focused upon, I cannot approve of police officers serving as jurors in criminal cases, where, as here, a substantial part of the Commonwealth's evidence is police testimony. The possibility of prejudice exists and if the police officer is challenged and is less than certain in

---

[3] "A police officer should in no case serve as a juror. . . . It seems incompatible with justice that a defendant who has been apprehended by the police, and against whom police officers are going to testify should be tried by a jury made up of police officers." *State v. Butts*, 349 Mo. 213, 220, 159 S.W. 2d 790, 794 (1942). "Where other law enforcement officials, including the sheriff, were material witnesses in the case, the disqualification of this juror (a deputy) was not even a debatable question." *Tate v. People*, supra, at 540, 247 P. 2d at 671. "It may be a justifiable assumption that a former deputy sheriff would be more inclined to believe police officers with whom he had worked in the past than witnesses for the accused." *State v. Jackson*, supra, at 468, 147 N.W. 2d at 693.

his assertion of objectivity, the proper course is to disqualify him as a juror. The failure to disqualify the challenged juror in the instant case requires reversal despite the acquittal of the attempts charge.

I would reverse the judgments of sentence and grant appellants a new trial.